UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TYSON FOODS, INC., | ) | |
| IBP REDEVELOPMENT CORP., | ) | Civil Action No. 1:13-cv-56 |
| IBP FOOD CO., | ) | |
| FOODBRANDS SUPPLY CHAIN | ) | |
| SERVICES, INC., | ) | |
| TYSON CHICKEN, INC., | ) | |
| TYSON DELI, INC., | ) | |
| TYSON FRESH MEATS, INC., | ) | |
| TYSON POULTRY, INC., | ) | |
| TYSON PREPARED FOODS, INC., | ) | |
| TYSON PROCESSING SERVICES, INC., | ) | |
| and TYSON REFRIGERATED | ) | |
| PROCESSED MEATS, INC., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**COMPLAINT**

Plaintiff, the United States of America, by the authority of the Attorney General, through its undersigned attorneys, and at the request of the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint seeking injunctive relief and civil penalties and alleges the following:

**NATURE OF THE ACTION**

1.     This is a civil action brought pursuant to Section 113(b)(2) of the Clean Air Act ("the Act" or "CAA"), 42 U.S.C. § 7413(b)(2), against Defendants Tyson Foods, Inc. ("Tyson"), IBP Redevelopment Corporation, IBP Food Co., Foodbrands Supply Chain Services, Inc., Tyson Chicken, Inc., Tyson Deli, Inc., Tyson Fresh Meats, Inc., Tyson Poultry, Inc., Tyson Prepared Foods, Inc., Tyson Processing Services, Inc., and Tyson Refrigerated Processed Meats, Inc., for their violations of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over the subject matter of this action pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1331, 1345 and 1355.

3.     All of the Defendants consent to jurisdiction of this Court.

4.     Venue is proper in this judicial district pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b), and 28 U.S.C. §§ 1391(b) and (c) and 1395.   Tyson Foods, Inc., IBP Redevelopment Corporation, Tyson Fresh Meats, Inc., and Tyson Chicken, Inc. do business in this judicial district. Many of the claims herein arose within this judicial district.

5.     Notice of commencement of this action has been given to the States of Iowa, Kansas, Nebraska and Missouri pursuant to Section 113(b) of the Act, 42 U.S.C. § 7413(b).

## DEFENDANTS

6.     Tyson Foods, Inc. ("Tyson") is a corporation organized under the laws of Arkansas and doing business in this judicial district.

7.     IBP Redevelopment Corporation is a corporation organized under the laws of Missouri and doing business in this judicial district.

8.     Tyson Fresh Meats, Inc. is a corporation organized under the laws of Delaware and doing business in this judicial district.

9.     Tyson Chicken, Inc. is a corporation organized under the laws of Delaware and doing business in this judicial district.

10.    Foodbrands Supply Chain Service, Inc. is a corporation organized under the laws of Delaware.

11.    IBP Food Co. is a corporation organized under the laws of Delaware.

12.    Tyson Deli, Inc. is a corporation organized under the laws of Delaware.

13.    Tyson Poultry, Inc. is a corporation organized under the laws of Delaware.

14.    Tyson Prepared Foods, Inc. is a corporation organized under the laws of Delaware.

15.    Tyson Processing Services, Inc. is a corporation organized under the laws of Delaware.

16.    Tyson Refrigerated Processed Meats, Inc. is a corporation organized under the laws of Delaware.

17.    Every defendant is a "person" as defined by Section 302(e) of the Act, 42 U.S.C. § 7602(e), within the meaning of Section 113(b) of the Act, 42 U.S.C. § 7413(b).

### STATUTORY AND REGULATORY FRAMEWORK

18.    Section 112(r) of the Act, 42 U.S.C. § 7412(r), required EPA to promulgate programs and regulations preventing accidental releases of extremely hazardous chemicals from stationary sources and minimizing the consequences of the accidental releases that do occur.

19.    In accordance with Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7), EPA promulgated the Risk Management Program.  This program requires owners or operators of a stationary source at which an extremely hazardous substance is present in more than a threshold amount to, among other things, prepare and implement a risk management program that

includes: a management system, hazard assessment, and a prevention program. These components must be submitted in a Risk Management Plan ("RMP") to EPA and must detect and prevent, or minimize accidental releases of extremely hazardous substances from the stationary source, and address emergency response to any such releases in order to protect human health and the environment.

20.     In 1994, pursuant to Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7), the Administrator of EPA promulgated regulations applicable to owners or operators of stationary sources at which extremely hazardous substances are present.  These regulations are found at 40 C.F.R. Part 68.

21.     Pursuant to Section 112(r)(7) of the Act, and 40 C.F.R. §§ 68.10(a) and 68.150, the owner or operator of a stationary source that has more than a threshold quantity of an extremely hazardous substance in a process shall comply with the requirements of 40 C.F.R. Part 68, including, but not limited to, the submission of an RMP to EPA.  The RMP shall be submitted not later than the latest of the following dates: June 21, 1999, three years after the date on which such extremely hazardous substance is first listed under 40 C.F.R. § 68.130, or the date on which the extremely hazardous substance is first present in a process above the threshold quantity.

22.     The regulations at 40 C.F.R. Part 68 separate the processes into three categories, designated as Program 1, Program 2, and Program 3, and set forth specific requirements for owners and operators of stationary sources with processes that fall within the respective programs.  A process is subject to Program 3 requirements in accordance with 40 C.F.R. § 68.10(d), if the process does not meet one or more of the Program 1 eligibility requirements set forth in 40 C.F.R. § 68.10(b), and if either of the following conditions is met: (a) the process is

listed in one of the specific North American Industry Classification System codes found at 40 C.F.R. § 68.10(d)(1); or (b) the process is subject to the United States Occupational Safety and Health Administration ("OSHA") process safety management standard set forth in 29 C.F.R. § 1910.119 (hereinafter a "covered process").

23.     Pursuant to 40 C.F.R. § 68.12(d) the owner or operator of a stationary source that is subject to Program 3 prevention requirements must undertake certain tasks including, but not limited to: developing and implementing a management system (as provided in 40 C.F.R. § 68.15); conducting a hazard assessment (as provided in 40 C.F.R. § 68.20)  to determine the area impacted by a release; implementing prevention program requirements (as provided in 40 C.F.R. §§ 68.65-68.87) that include process safety information, operating procedures, training, mechanical integrity, management of change, compliance audits, incident investigations, employee participation, and hot work permits; and addressing  emergency response  (as provided in 40 C.F.R. §§ 68.90-68.95).

24.     Pursuant to 40 C.F.R. § 68.15, the owner or operator of a stationary source with covered processes subject to Program 3 prevention requirements must develop and implement a management system to oversee the implementation of the required risk management program elements.

25.     Pursuant to 40 C.F.R. § 68.150 *et seq.*, the owner or operator of a stationary source shall submit a single RMP that includes the information required for all covered processes as well as required corrections.

26.     Under Section 113(b) of the Act, 42 U.S.C. § 7413(b), the EPA Administrator may bring a civil action against any person that is the owner or operator of an affected source whenever such person has violated or is violating any requirement or prohibition of the Act, for

a permanent or temporary injunction and/or to assess and recover a civil penalty of up to $25,000 per day for each such violation.

27.     Under the Federal Civil Penalties Inflation Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvements Act of 1996 ("DCIA"), 31 U.S.C. § 3701, and pursuant to EPA's Civil Monetary Penalty Inflation Adjustment Rule, 69 *Fed. Reg.* 7,121 (Feb. 13, 2004) and 40 C.F.R. Part 19, 73 *Fed. Reg.* 75,340 (Dec. 11, 2008), promulgated pursuant to the DCIA, the maximum amount of the daily penalty is $27,500 per day for each such violation occurring from January 30, 1997 until March 15, 2004, $32,500 per day for each such violation occurring from March 15, 2004 until January 12, 2009, and $37,500 per day for each such violation occurring after January 12, 2009.

## GENERAL ALLEGATIONS

28.     Anhydrous ammonia is listed as a regulated extremely hazardous substance pursuant to Section 112(r)(3) of the Act, 42 U.S.C. § 7412(r)(3), and its implementing regulations, 40 C.F.R. § 68.130.

29.     For purposes of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7), the threshold quantity for anhydrous ammonia is listed in 40 C.F.R. § 68.130 as 10,000 pounds.

30.     Anhydrous ammonia storage vessels involve a regulated substance in storage, manufacturing, or handling of such substances, and constitute a covered "process" as defined by 40 C.F.R. § 68.3.

31.     The facilities that are the subject of this Complaint use anhydrous ammonia as a refrigerant for activities such as cooling food processing areas, as well as preserving food products. Such processes require anhydrous ammonia to be piped throughout a facility in a vapor and liquid state, collected in vessels, compressed in high pressure compressors, moved by

pumps, and run through evaporators and condensers. As a result, employees, the surrounding public and the environment are put at risk of exposure to this extremely hazardous substance if it is released from the process.

32.     Anhydrous ammonia is a colorless, highly irritating gas with a sharp, suffocating odor. Symptoms of human exposure to anhydrous ammonia include burning of the eyes, nose and throat after breathing even small amounts. With higher doses, coughing or choking may occur. Exposure to high levels of anhydrous ammonia can cause death from a swollen throat or from chemical burns to the lungs.

33.     In addition to its toxic effects, anhydrous ammonia can also be flammable or explosive under certain conditions.  Accordingly, the generally accepted practice within the ammonia refrigeration industry, as recognized in IIAR Bulletin 112 Section 4.2.1., is not to position large quantities of anhydrous ammonia in the same location as open flames or  hot surfaces  (a condition called "co-location"). The proper management of this chemical is essential to prevention of a release and/or explosion, and to an adequate response to a release or explosion.

34.     EPA examined records related to Tyson's compliance with the Risk Management Program regulations that were produced by Tyson in response to an information request from EPA pursuant to Section 114 of the Act, 42 U.S.C. § 7414, or otherwise, and as a result of its examination EPA has identified various violations of the regulations.

<u>South Hutchinson, KS – Facility 1</u>

35.     At all relevant times, Tyson Foods, Inc. and Tyson Prepared Foods, Inc. have been owners and/or operators of the South Hutchinson food service plant located at 9 North Washington Street South Hutchinson, Kansas.

36.     The South Hutchinson facility is located approximately 0.2 miles from the nearest population center.

37.     The South Hutchinson facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

38.     Tyson Foods, Inc. and Tyson Prepared Foods, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the South Hutchinson facility.

39.     The South Hutchinson facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

40.     On or before November 19, 2001, the South Hutchinson facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

41.     On November 1, 2006, OSHA inspected the South Hutchinson facility. Among other things, the inspector noted that the Standard Operating Procedure requiring personal protective equipment was inadequate. The inspector also noted that a safety relief valve that failed on October 31, 2006 was installed incorrectly, and was corroded and worn.

42.     On March 25, 2008, EPA inspected the South Hutchinson facility. Among other things, the inspector noted that Tyson had failed to complete an incident investigation report and timely update their RMP accident history relative to an October 31, 2006 anhydrous ammonia release.

43.     Pursuant to 40 C.F.R. § 68.81, Tyson was required to investigate each incident that resulted in or could have resulted in a catastrophic release of a regulated substance as promptly as possible, but not later than 48 hours following the incident. However, Tyson's incident investigation report was not completed, signed and dated until May 20, 2011.

Sedalia, MO – Facility 2

44.     At all relevant times, Tyson Foods, Inc. and Tyson Poultry, Inc. have been owners and/or operators of the Sedalia poultry processing, hatchery, and animal protein facility located at 19571 Whitfield Road Sedalia, Missouri.

45.     The Sedalia facility is located approximately 6.6 miles from the nearest population center.

46.     The Sedalia facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

47.     Tyson Foods, Inc. and Tyson Poultry, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Sedalia facility.

48.     The Sedalia facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

49.     On or before June 18, 1999 the Sedalia facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

50.     EPA inspected the Sedalia facility on November 18, 2009. Among other things, the inspector reviewed Tyson's February 17-20, 2009 Process Hazard Analysis, a component of the chemical accident prevention program aimed at determining what can cause an accidental release. Tyson's Process Hazard Analysis noted numerous issues, including deficiencies with procedures related to management of process equipment changes and related to valve motors, and multiple nuisance leaks during manual operation of the valves.

Hutchinson, KS – Facility 3

51.     At all relevant times, Tyson Foods, Inc. and Tyson Prepared Foods, Inc. have been owners and/or operators of the Hutchinson food plant located at 521 South Main Hutchinson, Kansas.

52.     The Hutchinson facility is located approximately 1.2 miles from the nearest population center.

53.     The Hutchinson facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

54.     Tyson Foods, Inc. and Tyson Prepared Foods, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Hutchinson facility.

55.     The Hutchinson facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

56.     On or before June 21, 2004, the Hutchinson facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

57.     On December 14, 2006, OSHA inspected the facility. Among other things, the inspector noted that the vibration on the filter housing caused threads to deteriorate, allowing the filter oil seal to fail. The inspection revealed that during an anhydrous ammonia release the alarm did not sound, as the sensor head had been removed from the machine room. OSHA found that Tyson had been inspected by OSHA in the past and was aware of the requirement for ammonia detection devices in the machine room as set forth in industry standards.

<u>Omaha, NE – Facility 4</u>

58.     At all relevant times, Tyson Foods, Inc. and Tyson Processing Services, Inc. have been owners and/or operators of the Omaha bacon processing facility located at 13076 Renfro Circle Omaha, Nebraska.

59.     The Omaha facility is located approximately 10.5 miles from the nearest population center.

60.     The Omaha facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

61.     Tyson Foods, Inc. and Tyson Processing Services, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Omaha facility.

62.     The Omaha facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

63.     On or before December 13, 2004, the Omaha facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

64.     OSHA inspected the facility on January 8, 2007. Among other things, the inspection revealed that Tyson had not implemented its mechanical integrity program relative to the change out of valves, including the valve that failed in a December 2006 release. In addition, the inspection revealed that there was no documentation of inspection, testing, or five-year change-out of the safety relief valve.

65.     EPA inspected the Omaha facility on July 8, 2009 and noted that the incident investigation summary for a December 26, 2006 release determined that the cause of the release was a defective safety relief valve.   Yet, a 2009 compliance audit produced by Tyson in response to an EPA information request revealed that the facility still failed to follow generally accepted good engineering practices by failing to test and/or replace all safety relief valves every five years.

Perry, IA – Facility 5

66.     At all relevant times, Tyson Foods, Inc. and Tyson Fresh Meats, Inc. have been owners and/or operators of the Perry pork processing plant and cold storage warehouse facility located at 13500 I Court Perry, Iowa.

67.     The Perry facility is located approximately 1.6 miles from the nearest population center.

68.     The Perry facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

69.     Tyson Foods, Inc. and Tyson Fresh Meats, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Perry facility.

70.     The Perry facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

71.     On or before November 5, 2001, the Perry facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

72.     Tyson's incident investigation report for an October 4, 2007 release cited operator error for the release. However, the report also noted that there was a three-way safety relief valve failure.

73.     OSHA inspected the facility on December 15, 2009. Among other things, the inspection found that there was a broken and/or defective reducer in the safety relief valve that lead to a November 5, 2009 valve failure. OSHA also found that the facility's written operating procedures regarding control measures to be taken, if physical or airborne contact exposure occurs, did not include safety and health considerations.

74.     Tyson did not complete an incident investigation report for the November 5, 2009 release until November 8, 2010. The investigation report cited four operator errors as the cause of the release.

<u>Sioux City, IA – Facility 6</u>

75.     At all relevant times, Tyson Foods, Inc. and Tyson Fresh Meats, Inc. have been owners and/or operators of the Sioux City cold storage warehouse facility located at 3939 South Lewis Boulevard Sioux City, Iowa.

76.     The Sioux City facility is located approximately 4.2 miles from the nearest population center.

77.     The Sioux City facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

78.     Tyson Foods, Inc. and Tyson Fresh Meats, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Sioux City facility.

79.     The Sioux City facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

80.     On or before June 21, 2004, the Sioux City facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

81.     Internal documentation provided to EPA through information request responses revealed that Tyson was aware of a co-located ammonia refrigeration compressor and boiler since April 2005. Separation was not complete, however, until August 4, 2009.

<u>Emporia, KS – Facility 7</u>

82.     At all relevant times, Tyson Foods, Inc. and Tyson Fresh Meats, Inc. have been owners and/or operators of the Emporia beef processing plant and cold storage warehouse located at 2101 West 6th Emporia, Kansas.

83.     The Emporia facility is located approximately 1.8 miles from the nearest population center.

84.    The Emporia facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

85.    Tyson Foods, Inc. and Tyson Fresh Meats, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Emporia facility.

86.    The Emporia facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

87.    On or before November 5, 2001, the Emporia facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

88.    EPA inspected the facility on November 19, 2009. Among other things, the inspector found that Tyson failed to follow generally accepted good engineering practices by failing to test and/or replace all safety relief valves every five years.

<u>Cherokee, IA – Facility 8</u>

89.    At all relevant times, Tyson Foods, Inc. and Tyson Deli, Inc. have been owners and/or operators of the Cherokee food plant located at 1300 S. Lake Street Cherokee, Iowa.

90.    The Cherokee facility is located approximately 1.5 miles from the nearest population center.

91.    The Cherokee facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

92.    Tyson Foods, Inc. and Tyson Deli, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Cherokee facility.

93.    The Cherokee facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

94.    On or before November 19, 2001, the Cherokee facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

95.    Iowa OSHA inspected the facility on July 20, 2010. Among other things, the inspector noted systemic violations including but not limited to inadequate training, ammonia piping weakened by corrosion, ammonia piping not inspected and unlabeled, unsafe evacuation plans, results of incident investigations not shared with employees, failure to update piping and instrument diagrams, inadequate safety relief valve change-out documentation procedures, and co-located gas-fired boilers and ammonia compressors.

### Lexington, NE – Facility 9

96.    At all relevant times, Tyson Foods, Inc. and Tyson Fresh Meats, Inc. have been owners and/or operators of the Lexington beef processing center, cold storage warehouse, tannery, and transportation center located at 1500 Plum Creek Parkway Lexington, Nebraska.

97.    The Lexington facility is located approximately 1 mile from the nearest population center.

98.    The Lexington facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

99.    Tyson Foods, Inc. and Tyson Fresh Meats, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Lexington facility.

100.    The Lexington facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

101.    On or before March 8, 2005, the Lexington facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

102.   On January 26, 2011 OSHA inspected the Lexington facility. Among other things, the inspector found that Tyson failed to follow generally accepted good engineering practices by failing to test and/or replace all safety relief valves every five years. The inspector also found that boilers and ammonia compressors were co-located in the same room, in violation of generally accepted good engineering practices. Tyson's own mechanical integrity program and internal audits had identified both of these conditions and had required abating them.

<u>Madison, NE – Facility 10</u>

103.   At all relevant times, Tyson Foods, Inc. and Tyson Fresh Meats, Inc.  have been owners and/or operators of the Madison, NE pork processing plant located at 1200 Industrial Parkway Madison, Nebraska.

104.   The Madison facility is located approximately 0.7 miles from the nearest population center.

105.   The Madison facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

106.   Tyson Foods, Inc. and Tyson Fresh Meats, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Madison facility.

107.   The Madison facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

108.   On or before November 5, 2001, the Madison facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

109.   Documents provided to EPA by Tyson in response to an information request indicate that a 2005 compliance audit revealed the co-location of boilers and ammonia compressors.

110.   On April 13, 2008 OSHA inspected the Madison facility. Among other things, the inspector still found co-location of compressors and boilers, and insufficient documentation regarding inspection, testing, and change out of safety relief valves.

<u>Council Bluffs, IA (Case Ready and Cooked Meats Processes) – Facility 11</u>

111.   At all relevant times, Tyson Foods, Inc., Tyson Fresh Meats, Inc., the IBP Food Co., and Tyson Prepared Foods, Inc. have been owners and/or operators of the Council Bluffs "stationary source" that includes a case ready anhydrous ammonia refrigeration process located at 2700 23rd Avenue and a cooked meats anhydrous ammonia refrigeration process at 2101 So. 29th Street in Council Bluffs, Iowa (collectively the "Council Bluffs facility").

112.   The Council Bluffs processes are located approximately 1.6 to 4.8 miles from the nearest population center.

113.   The Council Bluffs facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

114.   Tyson Foods Inc., Tyson Fresh Meats, Inc., the IBP Food Co., and Tyson Prepared Foods, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia in a process at the Council Bluffs stationary source.

115.   The Council Bluffs facility contains two processes that are subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

116.   On or before January 7, 2002, the Council Bluffs facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

117.   In October 2004, an internal compliance audit noted co-location of a boiler and ammonia compressor equipment. Not until on or about June 22, 2009 did Tyson request funding to build a wall between these two pieces of equipment, to be completed by December of 2011.

118.   Internal documentation provided by Tyson from 2010 thru 2012 to EPA revealed that Tyson had noted its process safety information was not complete relating to safety systems, and that initial, refresher, and refrigeration overview training was not documented.

<u>Columbus Junction, IA – Facility 12</u>

119.   At all relevant times, Tyson Foods, Inc. and Tyson Fresh Meats, Inc. have been owners and/or operators of the Columbus Junction animal slaughtering facility located at Highway 70 North Columbus Junction, Iowa.

120.   The Columbus Junction facility is located approximately 0.6 miles from the nearest population center.

121.   The Columbus Junction facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

122.   Tyson Foods, Inc. and Tyson Fresh Meats, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Columbus Junction facility.

123.   The Columbus Junction facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

124.   On or before November 19, 2001, the Columbus Junction facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

125.   In June 2005, an internal compliance audit identified co-location of a boiler and ammonia compressor in the engine room and required an investigation to include construction of a wall between boilers and ammonia compressors. Tyson scheduled completion of the investigation for 2012.

<u>Dakota City, NE – Facility 13</u>

126.    At all relevant times, Tyson Foods, Inc. and Tyson Fresh Meats, Inc. have been owners and/or operators of the Dakota City tannery, cattle slaughtering, and processing facility located at Highway 35 Dakota City, Nebraska.

127.    The Dakota City facility is located approximately 4.2 miles from the nearest population center.

128.    The Dakota City facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

129.    Tyson Foods, Inc. and Tyson Fresh Meats, Inc. handled, stored, and used, and continues to handle, store, and use anhydrous ammonia at the Dakota City facility.

130.    The Dakota City facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

131.    On or before November 19, 2001, the Dakota City facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

132.    Internal documentation provided by Tyson to EPA revealed that Tyson failed to follow generally accepted good engineering practices by failing to test and/or replace all safety relief valves every five years. The documentation also revealed that Tyson identified the co-location of a compressor and boiler at the Dakota City facility in 2007.  Tyson estimated that the construction to resolve the co-location would not be completed until April, 2012.

## Dexter, MO – Facility 14

133.    At all relevant times, Tyson Foods, Inc. and Tyson Chicken, Inc. have been owners and/or operators of the Dexter pork processing facility located at 1001 East Stoddard Dexter, Missouri.

134.   The Dexter facility is located approximately 1.0 miles from the nearest population center.

135.   The Dexter facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

136.   Tyson Foods, Inc. and Tyson Chicken, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Dexter facility.

137.   The Dexter facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

138.   On or before June 18, 1999, the Dexter facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

139.   Internal documentation provided by Tyson to EPA in response to information requests revealed that in 2007 Tyson noted the need to address a co-location issue by removing a water heater from an engine room also containing ammonia equipment. The water heater was not removed until December 18, 2010.

Storm Lake, IA -Facility 15

140.   At all relevant times, Tyson Foods, Inc. and Tyson Fresh Meats, Inc. have been owners and/or operators of the Storm Lake, Iowa animal (except poultry) slaughtering processing facility located at 1009 Richland Street, Storm Lake, Iowa.

141.   The Storm Lake facility is located approximately 0.5 miles from the nearest population center.

142.   The Storm Lake facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

143.   Tyson Foods, Inc. and Tyson Fresh Meats, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Storm Lake facility.

144.   On or before May 17, 1999, the Storm Lake facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

145.   The Storm Lake facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

146.   Internal documentation provided by Tyson to EPA revealed that in 2009 Tyson noted that management of change and prestart up safety reviews had not been completed.

<u>Olathe, KS  – Facility 16</u>

147.   At all relevant times, Tyson Foods, Inc. and Foodbrands Supply Chain Services, Inc. have been owners and/or operators of the Olathe refrigerated warehousing and storage facility located at 20701 West 159th Street, Olathe, Kansas.

148.   The Olathe facility is located approximately 2.2 miles from the nearest population center.

149.   The Olathe facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

150.   Tyson Foods, Inc. and Foodbrands Supply Chain Services, Inc. handled, stored, and used, and continues to handle, store, and use anhydrous ammonia at the Olathe facility.

151.   On or before November 20, 2000, the Olathe facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

152.   The Olathe facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

153.   Internal documentation provided by Tyson to EPA revealed that in 2010 the piping and instrument diagrams for the facility were not current.

### Finney County, KS - Facility 17

154.   At all relevant times, Tyson Foods, Inc. and Tyson Fresh Meats, Inc. have been owners and/or operators of the Finney animal (except poultry) slaughtering facility located at West Highway 50, Holcomb, Kansas.

155.   The Finney County facility is located approximately 1.3 from the nearest population center.

156.   The Finney County facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

157.   Tyson Foods, Inc. and Tyson Fresh Meats, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Finney County facility.

158.   On or before May 17, 1999, the Finney County facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

159.   The Finney County facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

160.   Internal documentation provided by Tyson to EPA revealed that in 2007 and 2011 Tyson had not included the relief system design and design basis in the process safety information pertaining to equipment in their anhydrous ammonia refrigeration process.

### Monett, MO  – Facility 18

161.   At all relevant times, Tyson Foods, Inc. and Tyson Poultry, Inc. have been owners and/or operators of the Monett poultry processing facility located at 800 County Road, Monett, Missouri.

162.   The Monett facility is located approximately 0.7 miles from the nearest population center.

163.   The Monett facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

164.   Tyson Foods, Inc. and Tyson Poultry, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Monett facility.

165.   On or before June 18, 1999, the Monett facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

166.   The Monett facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

167.   Internal documentation provided by Tyson to EPA revealed that in 2008 all operating procedures were not annually certified as correct and accurate.

### Noel, MO – Facility 19

168.   At all relevant times, Tyson Foods, Inc. and Tyson Chicken, Inc. have been owners and/or operators of the Noel poultry processing facility located at One Tyson Avenue, Noel, Missouri.

169.   The Noel facility is located approximately 0.9 miles from the nearest population center.

170.   The Noel facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

171.   Tyson Foods, Inc. and Tyson Chicken, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Noel facility.

172.   On or before June 18, 1999, the Noel facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

173.   The Noel facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

174.   Internal documentation provided by Tyson to EPA revealed that in 2009 three out of seven refrigeration operators did not meet initial training requirements required by the Risk Management Program regulations.

Montgomery City, MO – Facility 20

175.   At all relevant times, Tyson Foods, Inc., Tyson Fresh Meats, Inc., and IBP Redevelopment Corporation have been owners and/or operators of the Montgomery City refrigerated warehousing and storage facility located at 1001 Harness Drive, Montgomery City, Missouri.

176.   The Montgomery City facility is located approximately 1.5 miles from the nearest population center.

177.   The Montgomery City facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

178.   Tyson Foods, Inc., Tyson Fresh Meats, Inc., and IBP Redevelopment Corporation handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Montgomery City facility.

179.   On or before August 14, 2000, the Montgomery City facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

180.   The Montgomery City facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

181.   Internal documentation provided by Tyson to EPA revealed that in 2011 Tyson failed to annually certify all operating procedures as complete and accurate.

<u>Concordia, MO  – Facility 21</u>

182.   At all relevant times, Tyson Foods, Inc. and Tyson Deli, Inc. have been owners and/or operators of the Concordia perishable prepared food manufacturing facility located at 1901 South Saint Louis St., Concordia, Missouri.

183.   The Concordia facility is located approximately 0.8 miles from the nearest population center.

184.   The Concordia facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

185.   Tyson Foods, Inc. and Tyson Deli, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Concordia facility.

186.   On or before November 19, 2001, the Concordia facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

187.   The Concordia facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

188.   Internal documentation provided by Tyson to EPA revealed that in 2009 the previous Process Hazard Analysis recommendations had not been resolved in a timely manner.

<u>Waterloo, IA (Animal Slaughtering and Meat from Carcass Processes) – Facility 22</u>

189.   At all relevant times, Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc. have been owners and/or operators of the Waterloo complex that contains two separate anhydrous ammonia processes, an animal (except poultry) slaughtering and a meat from carcasses process. Both processes are located at 501 North Elk Run Road, Waterloo, Iowa.

190.    The Waterloo facility is located approximately 2.4 miles from the nearest population center.

191.    The Waterloo facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

192.    Tyson Foods, Inc., Tyson Fresh Meats, Inc., and Tyson Prepared Foods, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Waterloo facility.

193.    On or before May 4, 1999, the Waterloo facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

194.    The Waterloo facility contains two processes that are subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

195.    Internal documentation provided by Tyson to EPA in 2012 revealed: that the refrigeration system was outside the recognized and generally accepted good engineering practices relating to corrosion, relief system design, and proper piping size; that the Process Hazard Analysis action items had not been resolved in a timely manner; that preventative maintenance required to calibrate the ammonia alarms had not been preformed; failures to implement pre-start up safety reviews and safe work practices (lock-out tag-out- LOTO, confined space entry, and process opening); failures to complete or review incident investigations with affected employees; and failure to update and train employees on the Emergency Response Plan.

### Denison, IA – Facility 23

196.    At all relevant times, Tyson Foods, Inc. and Tyson Fresh Meats, Inc. have been owners and/or operators of the Denison cattle slaughtering facility located at 2490 Lincoln Way, Denison, Iowa.

197.   The Denison facility is located approximately 2 miles from the nearest population center.

198.   The Denison facility is a "stationary source" within the meaning of Section 112(r)(2)(C) of the Act, 42 U.S.C. § 7412(r)(2)(C).

199.   Tyson Foods, Inc. and Tyson Fresh Meats, Inc. handled, stored, and used, and continue to handle, store, and use anhydrous ammonia at the Denison facility.

200.   On or before May 10, 1999, the Denison facility has had an anhydrous ammonia inventory of more than 10,000 pounds.

201.   The Denison facility is a facility subject to "Program 3" requirements within the meaning of 40 C.F.R. §§ 68.10(d) and 68.12(d).

202.    Internal documentation provided by Tyson to EPA revealed: that safety relief valve design basis did not follow the recognized and generally accepted good engineering practices; that facility piping and valves were not labeled in accordance with the recognized and generally accepted good engineering practices; failures to address findings and recommendations of Process Hazard Analyses and compliance audits in a timely manner related to safety relief valve design.

FIRST CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the South Hutchinson Facility

203.   Paragraphs 1 through 202 are incorporated herein by reference.

204.   The South Hutchinson facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

205.   Tyson and Tyson Prepared Foods, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect

to the South Hutchinson facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

206.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

207.   On or about October 31, 2006, there was a release of anhydrous ammonia at the South Hutchinson facility.

208.   The release of anhydrous ammonia from the South Hutchinson facility on October 31, 2006 constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the Act. 42 U.S.C. § 7412(r)(2)(A).

209.   As a result of this release, there was at least one fatality and one injury.

210.   Tyson and Tyson Prepared Foods, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the South Hutchinson facility, including but not limited to the following violations:

- Failure to adequately develop and implement written operating procedures that provide clear instructions for safely conducting activities involved in covered processes in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately prevent exposure to an extremely hazardous chemical, including through use of engineering controls, administrative controls, and personal protective equipment in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to review operating procedures as often as necessary to assure they reflect current operating practice in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately develop and implement safe work practices to provide for the control of hazards during operations in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately establish a system to promptly address and resolve incident report findings and recommendations, including documentation of resolutions and corrective actions in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to timely and adequately submit the data required for any accidental release in compliance with the requirements of 40 C.F.R. Part 68.

211.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

212.   Tyson and Tyson Prepared Foods, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

SECOND CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Sedalia Facility

213.   Paragraphs 1 through 212 are incorporated herein by reference.

214.   The Sedalia facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

215.   Tyson and Tyson Poultry, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Sedalia facility because they the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

216.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

217.   On or about November 8, 2006 there was a release of anhydrous ammonia at the Sedalia facility.

218.   The release of anhydrous ammonia from the Sedalia facility on November 8, 2006 constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the Act. 42 U.S.C. § 7412(r)(2)(A).

219.    As a result of this release, there were at least three on-site injuries.

220.    Tyson and Tyson Poultry, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Sedalia facility, including but not limited to the following violations:

- Failure to timely and adequately submit the data required for any accidental release in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to promptly determine and document an appropriate response to each of the findings of a compliance audit, and document that deficiencies have been corrected in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately establish a system to promptly address Process Hazard Analysis findings and recommendations, including assuring that recommendations are resolved and documented; and failure to communicate this information to affected employees in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to timely submit a correction of emergency contact information within one month of any change in compliance with the requirements of 40 C.F.R. Part 68.

221.    Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

222.    Tyson and Tyson Poultry, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

### THIRD CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Hutchinson Facility

223.    Paragraphs 1 through 222 are incorporated herein by reference.

224.    The Hutchinson facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

225.    Tyson and Tyson Prepared Foods, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect

to the Hutchinson facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

226.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

227.   On or about December 9, 2006 there was a release of anhydrous ammonia at the Hutchinson facility.

228.   The release of anhydrous ammonia from the Hutchinson facility on December 9, 2006 constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the Act. 42 U.S.C. § 7412(r)(2)(A).

229.   As a result of this release, there were at least ten injuries. During the anhydrous ammonia release, employees were evacuated through the anhydrous ammonia plume venting from the roof of the facility.

230.   Tyson and Tyson Prepared Foods, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Hutchinson facility, including but not limited to the following violations:

- Failure to adequately correct equipment deficiencies before further use or in a safe and timely manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately document that equipment complies with recognized and generally accepted good engineering practices in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately perform inspections and tests on process equipment in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to update a process hazard analysis in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to properly implement a management system in compliance with the requirements of 40 C.F.R. Part 68;

- Failure to adequately develop and implement an emergency response program in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to promptly determine and document an appropriate response to each of the findings of a compliance audit and document that deficiencies have been corrected in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately train all employees in relevant procedures in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to timely and adequately submit the data required for any accidental release in compliance with the requirements of 40 C.F.R. Part 68.

231.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

232.   Tyson and Tyson Prepared Foods, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

FOURTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Omaha Facility

233.   Paragraphs 1 through 232 are incorporated herein by reference.

234.   The Omaha facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

235.   Tyson and Tyson Refrigerated Processed Meats, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Omaha facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

236.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard

assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

237.   On or about December 26, 2006 there was a release of anhydrous ammonia at the Omaha facility.

238.   The release of anhydrous ammonia from the Omaha facility on December 26, 2006 constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the Act. 42 U.S.C. § 7412(r)(2)(A).

239.   As a result of this release, there were at least five on-site injuries and 475 employees were evacuated.

240.   Tyson and Tyson Refrigerated Processed Meats, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Omaha facility, including but not limited to the following violations:

- Failure to have adequate procedures and measures for an emergency response after an accidental release in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to prepare documentation of training as required by 40 C.F.R. Part 68;
- Failure to train each employee involved in operating a process as required by 40 C.F.R. Part 68;
- Failure to adequately train each employee involved in maintaining the on-going integrity of  process equipment as required by 40 C.F.R. Part 68;
- Failure to promptly determine and document an appropriate response to each of the findings of a compliance audit, and document that deficiencies have been corrected in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately perform inspections and tests on process equipment in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately establish a system to promptly address Process Hazard Analysis findings and recommendations, including assuring that recommendations are resolved and documented; and failure to communicate this information to affected employees in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately perform inspections and tests on process equipment in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately correct equipment deficiencies before further use or in a safe and timely manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to update information if a change covered by this paragraph results in a change in the process safety information in compliance with the requirements of 40 C.F.R. Part 68;

- Failure to timely and adequately submit the data required for any accidental release in compliance with the requirements of 40 C.F.R. Part 68.

241.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

242.   Tyson and Tyson Refrigerated Processed Meats, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

FIFTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Perry Facility

243.   Paragraphs 1 through 242 are incorporated herein by reference.

244.   The Perry facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

245.   Tyson and Tyson Fresh Meats, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Perry facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

246.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

247.   On or about October 4, 2007 there was a release of anhydrous ammonia at the Perry facility.

248.   On or about November 5, 2009 there was a release of anhydrous ammonia at the Perry facility.

249.   The releases of anhydrous ammonia from the Perry facility on October 4, 2007 and November 5, 2009 constituted "accidental release[s]" within the meaning of Section 112(r)(2)(A) of the Act. 42 U.S.C. § 7412(r)(2)(A).

250.   As a result of each of these releases, the same employee was exposed to anhydrous ammonia. Following the November 5, 2009 ammonia release, this employee was chemically burned/frost bitten over 25% of his body and spent 45 days in the hospital.

251.   Tyson and Tyson Fresh Meats, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Perry facility, including but not limited to the following violations:

- Failure to adequately develop, review, and implement written operating procedures that provide clear instructions for safely conducting activities involved in covered processes in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately prevent exposure to an extremely hazardous chemical, including through use of engineering controls, administrative controls, and personal protective equipment in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately develop and implement safe work practices to provide for the control of hazards during operations in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately train each employee involved in maintaining the on-going integrity of process equipment as required by 40 C.F.R. Part 68;
- Failure to develop and implement written operating procedures for control measures to be taken if physical contact or airborne exposure occurs, as required by 40 C.F.R. Part 68;
- Failure to review operating procedures as often as necessary to assure they reflect current operating practice in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately correct equipment deficiencies before further use or in a safe and timely manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately ensure existing equipment is designed, maintained, inspected, tested and operating in a safe manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately establish a system to promptly address and resolve incident report findings and recommendations, including documentation of resolutions and corrective actions in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to timely and adequately submit the data required for any accidental release in compliance with the requirements of 40 C.F.R. Part 68.

252.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

253.   Tyson and Tyson Fresh Meats, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

SIXTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
at the Sioux City Facility

254.   Paragraphs 1 through 253 are incorporated herein by reference.

255.   The Sioux City facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

256.   Tyson and Tyson Fresh Meats, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Sioux City facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

257.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

258.   On or about October 30, 2007 there was a release of anhydrous ammonia at the Sioux City facility.

259.   The release of anhydrous ammonia from the Sioux City facility on October 30, 2007 constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the Act. 42 U.S.C. § 7412(r)(2)(A).

260.   As a result of this release, there was at least one injury.

261.   Tyson and Tyson Fresh Meats, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Sioux City facility, including but not limited to the following violations:

- Failure to initiate an incident investigation as promptly as possible, but not later than 48 hours following an incident in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to timely and adequately submit the data required for any accidental release in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to review operating procedures as often as necessary to assure they reflect current operating practice in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately correct equipment deficiencies before further use or in a safe and timely manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately document that equipment complies with recognized and generally accepted good engineering practices in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately ensure existing equipment is designed, maintained, inspected, tested and operating in a safe manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to promptly determine and document an appropriate response to each of the findings of a compliance audit, and document that deficiencies have been corrected in compliance with the requirements of 40 C.F.R. Part 68.

262.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

263.   Tyson and Tyson Fresh Meats, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

SEVENTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Emporia Facility

264.   Paragraphs 1 through 263 are incorporated herein by reference.

265.   The Emporia facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

266.   Tyson and Tyson Fresh Meats, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Emporia facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

267.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

268.   On or about April 17, 2009 there was a release of anhydrous ammonia at the Emporia facility.

269.   The release of anhydrous ammonia from the Emporia facility on April 17, 2009 constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the Act. 42 U.S.C. § 7412(r)(2)(A).

270.   As a result of this release, there was at least one injury.

271.   Tyson's incident investigation report for the release cited operator error as the cause of the release.

272.   Tyson and Tyson Fresh Meats, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Emporia facility, including but not limited to the following violations:

- Failure to promptly determine and document an appropriate response to each of the findings of a compliance audit, and document that deficiencies have been corrected in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to review operating procedures as often as necessary to assure they reflect current operating practice in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately develop, review, and implement written operating procedures that provide clear instructions for safely conducting activities involved in covered processes in compliance with the requirements of 40 C.F.R. Part 68;

- Failure to properly implement a management system in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately ensure existing equipment is designed, maintained, inspected, tested and operating in a safe manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately implement the pre-startup safety review in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately establish a system to promptly address and resolve incident report findings and recommendations, including documentation of resolutions and corrective actions in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately establish a system to promptly address Process Hazard Analysis findings and recommendations, including assuring that recommendations are resolved and documented; and failure to communicate this information to affected employees in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to timely submit a correction of emergency contact information within one month of any change in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to have inspection and testing procedures that follow recognized and generally accepted good engineering practices in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately document inspections and tests performed on process equipment in compliance with the requirements of 40 C.F.R. Part 68.

273.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

274.   Tyson and Tyson Fresh Meats, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

EIGTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Cherokee Facility

275.   Paragraphs 1 through 274 are incorporated herein by reference.

276.   The Cherokee facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

277.   Tyson and Tyson Deli, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the

Cherokee facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

278. 40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

279. On or about June 18, 2010 there was a release of anhydrous ammonia at the Cherokee facility.

280. The release of anhydrous ammonia from the Cherokee facility on June 18, 2010 constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the Act. 42 U.S.C. § 7412(r)(2)(A).

281. As a result of this release, one employee was hospitalized.

282. Tyson and Tyson Deli, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Cherokee facility, including but not limited to the following violations:

- Failure to adequately develop, review, and implement written operating procedures that provide clear instructions for safely conducting activities involved in covered processes in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to review operating procedures as often as necessary to assure they reflect current operating practice in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately establish a system to promptly address Process Hazard Analysis findings and recommendations, including assuring that recommendations are resolved and documented; and failure to communicate this information to affected employees in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately implement the pre-startup safety review in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately cover contractors within the requirements of 40 C.F.R. Part 68;
- Failure to adequately implement procedures for testing of emergency response equipment pursuant to the requirements of 40 C.F.R. Part 68;
- Failure to adequately train each employee involved in maintaining the on-going integrity of  process equipment as required by 40 C.F.R. Part 68;

- Failure to have inspection and testing procedures that follow recognized and generally accepted good engineering practices in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately correct equipment deficiencies before further use or in a safe and timely manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately document that equipment complies with recognized and generally accepted good engineering practices in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately ensure existing equipment is designed, maintained, inspected, tested and operating in a safe manner in compliance with the requirements of 40 C.F.R. Part 68.

283.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

284.   Tyson and Tyson Deli, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

NINTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Lexington Facility

285.   Paragraphs 1 through 284 are incorporated herein by reference.

286.   The Lexington facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

287.   Tyson and Tyson Fresh Meats, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Lexington facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

288.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard

assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

289.   Tyson and Tyson Fresh Meats, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Lexington facility, including but not limited to the following violations:

- Failure to adequately establish a system to promptly address Process Hazard Analysis findings and recommendations, including assuring that recommendations are resolved and documented; and failure to communicate this information to affected employees in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to review operating procedures as often as necessary to assure they reflect current operating practice in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to prepare documentation of training as required by 40 C.F.R. Part 68;
- Failure to adequately implement the pre-startup safety review in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately perform inspections and tests on process equipment in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately develop, review, and implement written operating procedures that provide clear instructions for safely conducting activities involved in covered processes in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately determine the relief system design basis as part of the process safety information in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately correct equipment deficiencies before further use or in a safe and timely manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately ensure that existing equipment is designed, maintained, inspected, tested and operating in a safe manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to train each employee involved in operating a process as required by 40 C.F.R. Part 68;
- Failure to adequately investigate each incident as required by 40 C.F.R. Part 68;
- Failure to adequately document that equipment complies with recognized and generally accepted good engineering practices in compliance with the requirements of 40 C.F.R. Part 68.

290.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

291.   Tyson and Tyson Fresh Meats, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

TENTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Madison Facility

292.   Paragraphs 1 through 291 are incorporated herein by reference.

293.   The Madison facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

294.   Tyson and Tyson Fresh Meats, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Madison facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

295.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

296.   On or about December 13, 2010 there was a release of anhydrous ammonia at the Madison facility.

297.   The release of anhydrous ammonia from the Madison facility on December 13, 2010 constituted an "accidental release" within the meaning of Section 112(r)(2)(A) of the Act. 42 U.S.C. § 7412(r)(2)(A).

298.   As a result of this release, at least three employees were injured.

299.   Tyson and Tyson Fresh Meats, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Madison facility, including but not limited to the following violations:

- Failure to adequately prevent exposure to an extremely hazardous chemical, including through use of engineering controls, administrative controls, and personal protective equipment in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately develop, review, and implement written operating procedures that provide clear instructions for safely conducting activities involved in covered processes in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately develop and implement safe work practices to provide for the control of hazards during operations in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately establish a system to promptly address and resolve incident report findings and recommendations, including documentation of resolutions and corrective actions in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to promptly determine and document an appropriate response to each of the findings of a compliance audit, and document that deficiencies have been corrected in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately correct equipment deficiencies before further use or in a safe and timely manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately document that equipment complies with recognized and generally accepted good engineering practices in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately ensure existing equipment is designed, maintained, inspected, tested and operating in a safe manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to prepare documentation of training as required by 40 C.F.R. Part 68;
- Failure to adequately cover contractors within the requirements of 40 C.F.R. Part 68;
- Failure to adequately update and revalidate a process hazard analysis as required by 40 C.F.R. Part 68;
- Failure to adequately consult with employees and their representatives concerning the conduct and development of process hazards analyses and on the development of the other elements of prevention program  required by 40 C.F.R. Part 68;
- Failure to include all required process safety information   pursuant to 40 C.F.R. Part 68;
- Failure to train all employees in relevant procedures as part of implementation of the emergency response plan as required by 40 C.F.R. Part 68;
- Failure to review operating procedures as often as necessary to assure they reflect current operating practice in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately implement the pre-startup safety review in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to have inspection and testing procedures that follow recognized and generally accepted good engineering practices in compliance with the requirements of 40 C.F.R. Part 68;

- Failure to adequately establish a system to promptly address Process Hazard Analysis findings and recommendations, including assuring that recommendations are resolved and documented; and failure to communicate this information to affected employees in compliance with the requirements of 40 C.F.R. Part 68.

300.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

301.   Tyson and Tyson Fresh Meats, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

ELEVENTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Council Bluffs Facility (Case Ready and Cooked Meats Processes)

302.   Paragraphs 1 through 301 are incorporated herein by reference.

303.   The Council Bluffs facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

304.   Tyson, Tyson Fresh Meats, Inc., the IBP Food Co., and Tyson Prepared Foods, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Council Bluffs stationary source because they are the owner and/or operator that had more than a threshold quantity of a regulated substance in a process.

305.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

306.   Tyson, Tyson Fresh Meats, Inc., the IBP Food Co., and Tyson Prepared Foods, Inc. failed to timely and adequately comply with the risk management program requirements of

the regulations at 40 C.F.R. Part 68 at the Council Bluffs facility, including but not limited to

the following violations:

- Failure to promptly determine and document an appropriate response to each of the findings of a compliance audit, and document that deficiencies have been corrected in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately correct equipment deficiencies before further use or in a safe and timely manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately document that equipment complies with recognized and generally accepted good engineering practices in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately ensure existing equipment is designed, maintained, inspected, tested and operating in a safe manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to include in the process safety information the relief system design and design basis in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to document initial, refresher, and refrigeration overview training had been conducted as required by 40 C.F.R. Part 68.

307.    Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a

violation of Section 112(r)(7) of the Act.

308.    Tyson, Tyson Fresh Meats, Inc., the IBP Food Co., and Tyson Prepared Foods,

Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each

violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).


TWELTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
at the Columbus Junction Facility

309.    Paragraphs 1 through 308 are incorporated herein by reference.

310.    The Columbus Junction facility has an inventory of more than 10,000 pounds of

anhydrous ammonia in a covered process.

311.    Tyson and Tyson Fresh Meats, Inc. are subject to the requirements of Section

112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect

to the Columbus Junction facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

312.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

313.   Tyson and Tyson Fresh Meats, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Columbus Junction facility, including but not limited to the following violations:

- Failure to promptly determine and document an appropriate response to each of the findings of a compliance audit, and document that deficiencies have been corrected in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately correct equipment deficiencies before further use or in a safe and timely manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately document that equipment complies with recognized and generally accepted good engineering practices in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately ensure existing equipment is designed, maintained, inspected, tested and operating in a safe manner in compliance with the requirements of 40 C.F.R. Part 68.

314.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

315.   Tyson and Tyson Fresh Meats, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

THIRTEENTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68<br>at the Dakota City Facility

316.   Paragraphs 1 through 315 are incorporated herein by reference.

317.   The Dakota City facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

318.   Tyson and Tyson Fresh Meats, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Dakota City facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

319.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

320.   Tyson and Tyson Fresh Meats, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Dakota City facility, including but not limited to the following violations:

- Failure to promptly determine and document an appropriate response to each of the findings of a compliance audit, and document that deficiencies have been corrected in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately correct equipment deficiencies before further use or in a safe and timely manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately document that equipment complies with recognized and generally accepted good engineering practices in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately ensure existing equipment is designed, maintained, inspected, tested and operating in a safe manner in compliance with the requirements of 40 C.F.R. Part 68.

321.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

322.   Tyson and Tyson Fresh Meats, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

FOURTEENTH CLAIM FOR RELIEF:

Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
at the Dexter Facility

323.   Paragraphs 1 through 322 are incorporated herein by reference.

324.   The Dexter facility has an inventory of more than 10,000 pounds of anhydrous

ammonia in a covered process.

325.   Tyson and Tyson Chicken, Inc. are subject to the requirements of Section 112(r)

of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the

Dexter facility because they are the owner and/or operator of a stationary source that had more

than a threshold quantity of a regulated substance in a process.

326.   40 C.F.R. § 68 requires the development and implementation of a risk

management program for Program 3 processes that: includes a management system, hazard

assessment, and a prevention program; addresses emergency response; and requires the facility

to submit a Risk Management Plan.

327.   Tyson and Tyson Chicken, Inc. failed to timely and adequately comply with the

risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Dexter

facility, including but not limited to the following violations:

- Failure to adequately establish a system to promptly address Process Hazard Analysis findings and recommendations, including assuring that recommendations are resolved and documented; and failure to communicate this information to affected employees in compliance with the  requirements of 40 C.F.R. Part 68;
- Failure to adequately correct equipment deficiencies before further use or in a safe and timely manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately document that equipment complies with recognized and generally accepted good engineering practices in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately ensure existing equipment is designed, maintained, inspected, tested and operating in a safe manner in compliance with the requirements of 40 C.F.R. Part 68.

328.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

329.   Tyson and Tyson Chicken, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

FIFTEENTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
at the Storm Lake Facility

330.   Paragraphs 1 through 329 are incorporated herein by reference.

331.   The Storm Lake facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

332.   Tyson and Tyson Fresh Meats, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Storm Lake facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

333.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

334.   Tyson and Tyson Fresh Meats, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Storm Lake facility, including but not limited to the following violations:

- Failure to adequately implement the management of change in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately implement the pre-startup safety review in compliance with the requirements of 40 C.F.R. Part 68.

335.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

336.   Tyson and Tyson Fresh Meats, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

SIXTEENTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
at the Olathe Facility

337.   Paragraphs 1 through 336 are incorporated herein by reference.

338.   The Olathe facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

339.   Tyson and Foodbrands Supply Chain Services, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Olathe facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

340.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

341.   Tyson and Foodbrands Supply Chain Services, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Olathe facility, including but not limited to the following violations:

- Failure to maintain current and accurate piping and instrument diagrams of equipment to support analysis in compliance with the requirements of 40 C.F.R. Part 68.

342.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

343.   Tyson and Foodbrands Supply Chain Services, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

SEVENTEENTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Finney County Facility

344.   Paragraphs 1 through 343 are incorporated herein by reference.

345.   The Finney County facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

346.   Tyson and Tyson Fresh Meats, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Finney County facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

347.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

348.   Tyson and Tyson Fresh Meats, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Finney County facility, including but not limited to the following violations:

- Failure to adequately determine the relief system design basis as part of the process safety information in compliance with the requirements of 40 C.F.R. Part 68.

349.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

350.   Tyson and Tyson Fresh Meats, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

EIGHTEENTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Monett Facility

351.   Paragraphs 1 through 350 are incorporated herein by reference.

352.   The Monett facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

353.   Tyson and Tyson Poultry, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Monett facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

354.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

355.   Tyson and Tyson Poultry, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Monett facility, including but not limited to the following violations:

   o   Failure to review and annually certify that operating procedures are current and accurate in compliance with the requirements in 40 C.F.R. Part 68.

356.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

357.   Tyson and Tyson Poultry, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

NINTEENTH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Noel Facility

358.   Paragraphs 1 through 357 are incorporated herein by reference.

359.   The Noel facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

360.   Tyson and Tyson Chicken, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Noel facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

361.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

362.   Tyson and Tyson Chicken, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Noel facility, including but not limited to the following violations:

- Failure to provide initial training for each employee presently involved in operating a RMP process in compliance with the requirements of 40 C.F.R. Part 68.

363.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

364.   Tyson and Tyson Chicken, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

TWENTIETH CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Montgomery City Facility

365.   Paragraphs 1 through 364 are incorporated herein by reference.

366.   The Montgomery City facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

367.   Tyson, IBP Redevelopment Corp., and Tyson Fresh Meats, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Montgomery City facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

368.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

369.   Tyson, IBP Redevelopment Corp., and Tyson Fresh Meats, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Montgomery facility, including but not limited to the following violations:

- Failure to review and annual certify that operating procedures are current and accurate in compliance with the requirements in 40 C.F.R. Part 68.

370.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

371.   Tyson, IBP Redevelopment Corp., and Tyson Fresh Meats, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

TWENTYFIRST CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68 at the Concordia Facility

372.   Paragraphs 1 through 371 are incorporated herein by reference.

373.   The Concordia facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

374.   Tyson and Tyson Deli, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Concordia facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

375.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

376.   Tyson and Tyson Deli, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Concordia facility, including but not limited to the following violations:

- Failure to adequately establish a system to promptly address Process Hazard Analysis findings and recommendations, including assuring that recommendations are resolved

and documented; and failure to communicate this information to affected employees in compliance with the requirements of 40 C.F.R. Part 68.

377.    Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

378.    Tyson and Tyson Deli, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

TWENTYSECOND CLAIM FOR RELIEF:<br>Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68<br>at the Waterloo Facility

379.    Paragraphs 1 through 378 are incorporated herein by reference.

380.    The Waterloo facility has an inventory of more than 130,000 pounds of anhydrous ammonia in the two covered processes.

381.    Tyson, Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Waterloo facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

382.    40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

383.    Tyson, Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Waterloo facility, including but not limited to the following violations:

- Failure to properly implement a management system in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to properly document that equipment complies with the recognized and generally accepted good engineering practices relating to corrosion, relief system design, and proper piping size in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to timely resolve Process Hazard Analysis action items in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to adequately ensure existing equipment is designed, maintained, inspected, tested and operating in a safe manner in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to implement pre-start up safety reviews, safe work practices (lock-out tag-out-LOTO, confined space entry, and process opening) in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to complete and review with affected employees incident investigations in compliance with the requirements of 40 C.F.R. Part 68;
- Failure to update and train employees on the Emergency Response Plan in compliance with the requirements of 40 C.F.R. Part 68.

384.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

385.   Tyson, Tyson Fresh Meats, Inc. and Tyson Prepared Foods, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

TWENTYTHIRD CLAIM FOR RELIEF:
Failure to Implement a Risk Management Program that Complies with 40 C.F.R. Part 68
at the Denison, Iowa Facility

386.   Paragraphs 1 through 385 are incorporated herein by reference.

387.   The Denison facility has an inventory of more than 10,000 pounds of anhydrous ammonia in a covered process.

388.   Tyson and Tyson Fresh Meats, Inc. are subject to the requirements of Section 112(r) of the Clean Air Act, 42 U.S.C. § 7412(r), and 40 C.F.R. Part 68, Subpart G, with respect to the Denison facility because they are the owner and/or operator of a stationary source that had more than a threshold quantity of a regulated substance in a process.

389.   40 C.F.R. § 68 requires the development and implementation of a risk management program for Program 3 processes that: includes a management system, hazard assessment, and a prevention program; addresses emergency response; and requires the facility to submit a Risk Management Plan.

390.   Tyson and Tyson Fresh Meats, Inc. failed to timely and adequately comply with the risk management program requirements of the regulations at 40 C.F.R. Part 68 at the Denison facility, including but not limited to the following violations:

- Failure to address findings and recommendations from Process Hazard Analysis and compliance audits in a timely manner in compliance with the requirements in 40 C.F.R. Part 68;
- Failure to insure that safety information complies with the recognized and generally accepted good engineering practices, and document existing equipment built to an obsolete code, standard, or practice is designed, maintained, inspected, tested and operating in a safe manner in compliance with the requirements of 40 C.F.R. Part 68.

391.   Each failure to comply with the requirements of 40 C.F.R. Part 68 constitutes a violation of Section 112(r)(7) of the Act.

392.   Tyson and Tyson Fresh Meats, Inc. are liable for injunctive relief and the assessment of civil penalties for each day of each violation of Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7).

## RELIEF SOUGHT

WHEREFORE, Plaintiff, the United States, respectfully prays that this Court provide the following relief:

1.     Enjoin Defendants from operating the facilities listed at Paragraphs 1 through 392, except in accordance with the Clean Air Act and the regulations implementing the Clean Air Act, including demonstrating compliance with Section 112(r)(7) of the Act, 42 U.S.C. § 7412(r)(7);

2.      Order Defendants to pay a civil penalty for each day of each violation of the Clean Air Act and the applicable regulations of up to $27,500 per day from November 15, 2002 to March 15, 2004; up to $32,500 per day from March 15, 2004 to January 12, 2009, and up to $37,500 per day for each such violation after January 12, 2009;

3.      Award the United States its costs of this action; and

4.      Grant the United States such further relief as this Court may deem just and proper.


                                        IGNACIA S. MORENO
                                        Assistant Attorney General
                                        Environment and Natural Resources
                                        Division
                                        United States Department of Justice

Dated: _4/2/13_____              by: /s/ Sara A. Colangelo _____
                                        SARA A. COLANGELO
                                        Trial Attorney
                                        Environmental Enforcement Section
                                        Environment and Natural Resources
                                        Division
                                        United States Department of Justice
                                        601 D. Street, N.W.
                                        Washington, DC  20004


                                        RICHARD G. CALLAHAN
                                        United States Attorney
                                        Eastern District of Missouri


                                        /s/ Nicholas P. Llewellyn_____
                                        NICHOLAS P. LLEWELLYN
                                        Assistant United States Attorney
                                        Eastern District of Missouri
                                        Bar No. 43839MO